## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## at LOUISVILLE

*Electronically Filed*

| | |
|---|---|
| JACOB "JACK" BRADLEY, ) <br> JUDITH BRADLEY, and ) <br> DANIEL BRADLEY ) <br>  ) <br> Plaintiffs/Counterrespondents ) <br>  ) <br> vs. ) <br>  ) <br> JEFFERSON COUNTY PUBLIC SCHOOLS ) <br>  Defendant/Counterclaimant/Crossclaimant/Third- ) <br> Party Plaintiff ) <br>  ) <br> KENTUCKY DEPARTMENT OF EDUCATION ) <br>  Defendant/Crossrespondent ) <br>  ) <br> MOREHEAD STATE UNIVERSITY ) <br>  Defendant ) <br>  ) <br> GRETTA HYLTON, in her official capacity as ) <br> Director of the Office of Special Education and ) <br> Early Learning ) <br>  Third-Party Defendant ) | Civil Action No.: 3:20-cv-00450-GNS |

### ANSWER, COUNTERCLAIM, CROSS-CLAIM AND THIRD-PARTY COMPLAINT OF JEFFERSON COUNTY PUBLIC SCHOOLS

Defendant, Jefferson County Public Schools, (hereinafter "JCPS"), hereby submits the following Answer, Counterclaim, Cross-claim and Third-Party Complaint in response to the Complaint filed against it by Plaintiffs Jacob "Jack" Bradley, Daniel Bradley and Judith Bradley.

### ANSWER

### FIRST DEFENSE

1.  With regard to paragraph 1 of the Complaint, JCPS admits the allegations set forth in the first, second and third sentences to the extent that those sentences are consistent with federal and state law and denies the allegations to the extent that they are inconsistent with federal and state law. JCPS is without sufficient knowledge to admit or deny the fourth sentence in paragraph

1 of the Complaint, and therefore denies same. JCPS admits the allegations set forth in the fifth sentence of paragraph 1. JCPS denies the allegations set forth in the sixth sentence of paragraph 1 of the Complaint. With regard to the seventh sentence in paragraph 1 of the Complaint, JCPS admits the allegations but states that MSU was not required to implement Jack's IEP. JCPS denies the allegations set forth in the eighth and ninth sentences of paragraph 1 of the Complaint. With regard to the tenth sentence in paragraph 1 of the Complaint, JCPS denies that the hearing officer improperly dismissed the Bradleys' claims against all Defendants, but admits the rest of that sentence. JCPS is without sufficient knowledge to admit or deny the eleventh sentence of paragraph 1 of the Complaint, and therefore denies same. JCPS denies the twelfth and thirteenth sentences of paragraph 1 of the Complaint.

2. JCPS denies the allegations set forth in paragraph 2 of the Complaint.

3. JCPS admits the allegations set forth in paragraphs 3 and 4 of the Complaint.

4. With regard to paragraph 5 of the Complaint, JCPS admits the allegations set forth in the first sentence to the extent that they are consistent with federal and state law and denies the allegations to the extent that they are inconsistent with federal and state law. JCPS is without sufficient knowledge to admit or deny the allegations set forth in the second sentence of paragraph 5 of the Complaint, and therefore denies same. JCPS admits the allegations set forth in the third sentence to the extent that they are consistent with federal and state law and denies the allegations to the extent that they are inconsistent with federal and state law. JCPS admits the allegations set forth in the fourth sentence of paragraph 5 of the Complaint. JCPS denies the allegations set forth in the fifth sentence of paragraph 5 of the Complaint.

5. With regard to paragraph 6 of the Complaint, JCPS admits the allegations set forth in the first sentence and denies the allegations set forth in the second and third sentences.

6. With regard to paragraph 7 of the Complaint, JCPS admits the allegations set forth in the first sentence and admits the allegations in the second, third and fourth sentences to the

extent those allegations are consistent with federal and state law and denies the allegations to the extent they are inconsistent with federal and state law.

7. With regard to paragraph 8 of the Complaint, JCPS admits the allegations set forth in the first sentence and admits the allegations set forth in the second, third and fourth sentences to the extent those allegations are consistent with federal and state law and denies the allegations to the extent they are inconsistent with federal and state law.

8. With regard to the first sentence in paragraph 9 of the Complaint, JCPS admits that Morehead State University is a public university that hosts the Craft Academy for Excellence in Science and Mathematics but is without sufficient knowledge to admit or deny the remaining allegations in that sentence and therefore denies same. JCPS is without sufficient knowledge to admit or deny the allegations set forth in the second sentence of paragraph 9 of the Complaint, and therefore denies same. JCPS denies the allegations set forth in the third sentence of paragraph 9 of the Complaint. JCPS admits the allegations set forth in the fourth sentence of paragraph 9 of the Complaint to the extent those allegations are consistent with federal and state law and denies the allegations to the extent they are inconsistent with federal and state law.

9. JCPS admits the allegations set forth in paragraph 10 of the Complaint.

10. JCPS is without sufficient knowledge to admit or deny the allegations set forth in paragraphs 11, 12 and 13 of the Complaint, and therefore denies same.

11. JCPS admits the allegations set forth in paragraphs 14 and 15 of the Complaint.

12. With regard to paragraph 16 of the Complaint, JCPS states that the IEPs speak for themselves and therefore admits the allegations to the extent that they are consistent with the IEPs and denies the allegations to the extent that they are inconsistent with the IEPs.

13. JCPS admits the allegations set forth in paragraphs 17, 18, 19, 20, 21 and 22 of the Complaint.

14. JCPS denies the allegations set forth in paragraphs 23 and 24 of the Complaint.

15. JCPS admits the allegations set forth in paragraph 25 of the Complaint.

16. JCPS denies the allegations set forth in paragraph 26 of the Complaint.

17. With regard to paragraph 27 of the Complaint, JCPS admits that JCPS received funds while Jack attended Craft Academy but denies that those funds were designated specifically for Jack's education.

18. JCPS denies the allegations set forth in paragraphs 28, 29, 30, 31 and 32 of the Complaint.

19. JCPS admits the allegations set forth in paragraphs 33, 34, 35, 36 and 37 of the Complaint.

20. JCPS denies the allegations set forth in paragraphs 38, 39, 40, 41, 42, 43, 44, 45, 46 and 47 of the Complaint.

21. With regard to paragraph 48 of the Complaint, JCPS admits that it was error for the ECAB to remand any portion of the case.

22. With regard to paragraph 49, JCPS incorporates by reference all other admissions, denials and defenses stated herein.

23. JCPS denies the allegations set forth in paragraph 50 of the Complaint.

24. With regard to paragraph 51 of the Complaint, JCPS incorporates by reference all other admissions, denials and defenses stated herein.

25. With regard to paragraph 52 of the Complaint, JCPS admits that it is a state agency, but the paragraph is ambiguous, and therefore JCPS is without knowledge as to the remaining allegations set forth therein and therefore denies same.

26. JCPS denies the allegations set forth in paragraph 53 of the Complaint.

27. With regard to paragraph 54 of the Complaint, JCPS incorporates by reference all other admissions, denials and defenses stated herein.

28. JCPS admits the allegations set forth in paragraph 55 of the Complaint.

29. JCPS is without sufficient knowledge to admit or deny the allegations set forth in paragraph 56 of the Complaint, and therefore denies same.

30. JCPS admits the allegations set forth in paragraph 57 of the Complaint.

31. JCPS denies the allegations set forth in paragraphs 58 and 59 of the Complaint.

32. With regard to paragraph 60 of the Complaint, JCPS incorporates by reference all other admissions, denials and defenses stated herein.

33. JCPS admits the allegations set forth in paragraphs 61 and 62 of the Complaint.

34. JCPS denies the allegations set forth in paragraphs 63 and 64 in the Complaint.

35. All allegations not expressly admitted are hereby denied.

## SECOND DEFENSE

36. Plaintiffs have failed to state a claim upon which relief can be granted.

## THIRD DEFENSE

37. JCPS asserts failure to mitigate damages, failure to name a necessary party and failure to exhaust administrative remedies as defenses in this case.

## FOURTH DEFENSE

38. Plaintiffs cannot recover fees in this matter as they did not achieve success on the merits of their claims.

## FIFTH DEFENSE

39. Plaintiffs are not prevailing parties because there was no material alteration of the legal relationship between the parties.

## SIXTH DEFENSE

40. JCPS was not required to provide special education services and instruction at Craft Academy given that that the ARC did not determine that placement at Craft was required to provide Jack with FAPE, and Craft is not considered to be secondary school education under state law.

## COUNTERCLAIM, CROSS-CLAIM AND THIRD-PARTY COMPLAINT

Defendant/Counterclaimant/Crossclaimant/Third-Party Plaintiff, JCPS, by and through its counsel of record, hereby complains against Plaintiffs/Counterrespondents, Jacob Bradley, Judith Bradley and Daniel Bradley, Defendant/Crossrespondent Defendant Kentucky Department of Education Office of Special Education and Early Learning and Third-Party Defendant Gretta Hylton as follows:

### INTRODUCTION

This Counterclaim is brought pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U. S. C. § 1415(i)(2)(A) as an appeal from an administrative Decision rendered by the Exceptional Children's Appeals Board (hereinafter "ECAB") on May 21, 2020 (*see* "Order", attached hereto as Exhibit A) in KDE Agency Case No. 1819-32 styled *Jacob Bradley vs. Jefferson County Public Schools, Kentucky Department of Education, and Morehead State University*. The body of the decision of the state administrative appeals panel indicates that it affirms the state hearing officer's decision that JCPS had no legal obligation to provide special education services to Jack while he chose to attend Craft Academy for Excellence in Science and Mathematics ("Craft"), a post-secondary program at Morehead State University. The Plaintiffs concede this point in their Complaint by stating that the "ECAB erred by finding that JCPS owed no duty to provide FAPE to Plaintiff Jack Bradley while he attended the Craft Academy." Complaint, ¶44. However, the ECAB did not expressly state it was dismissing this claim against JCPS. Therefore in an abundance of caution, JCPS appeals the ECAB decision to the extent that ECAB should have also stated expressly that it was dismissing the claim that JCPS had an obligation to implement Jack's IEP while he was away attending Craft.

In addition, the state administrative appeals panel mistakenly found that a portion of the case should be remanded to determine if JCPS offered a free an appropriate public education to

Jack before he chose to attend Craft, but no hearing would change the legal conclusion reached by the state hearing officer in this case.

## THE PARTIES

1. JCPS is a public school district located and operating within Jefferson County, Kentucky. JCPS is a state entity which operates pursuant to Kentucky revised statutes, including but not limited to, KRS 160.160, 160.290 and 157.224(2).

2. Plaintiff/Counterrespondent, Jacob ("Jack") Bradley, is currently nineteen (19) years old. Jack is a former student in the JCPS system, having graduated from DuPont Manual High School on June 8, 2019.

3. Plaintiffs/Counterrespondents Judith and Daniel Bradley (collectively the "Bradleys") are Jack's parents. Two days prior to Jack's graduation, the Bradleys filed a request for a due process hearing ("Initial Request") on behalf of their son with the Kentucky Department of Education ("KDE") alleging, among other things, that JCPS failed to provide special education services and implement an Individual Education Plan (IEP) for Jack while he attended Craft Academy for Excellence in Science and Mathematics ("Craft") at Morehead State University ("MSU").

4. Defendant/Crossrespondent KDE Office of Special Education and Early Learning is the agency of the Commonwealth of Kentucky that oversees implementation of the IDEA in this state and has responsibility and authority to implement due process hearing procedures, including procedures for an administrative appeal consistent with 20 U. S. C. §1415 and state law. Defendant/Third-Party Defendant KDE Office of Special Education and Early Learning is not called upon to answer the substance of the Third-Party Complaint but has been named as a party in order to give full effect to any final order or judgment of this Court, to make such order or judgment binding on KDE Office of Special Education and Early Learning, and to provide the administrative record to this Court.

5. Third-Party Defendant Gretta Hylton is the Director of the Office of Special Education and Early Learning for KDE who is named in her official capacity only. Third-Party Defendant Hylton is not called upon to answer the substance of the Third-Party Complaint, but has been named as a party in order to provide the record in the administrative action to this Court, to give full effect to any final order or judgment of this Court which requires any action by or on behalf of KDE Office of Special Education and Early Learning and to give full relief to the real parties in interest.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 20 U. S. C. §1415(i)(2)(A) and §1415 (i)(3)(A), which grant a District Court of the United States subject matter jurisdiction over actions arising under the IDEA without regard to the amount in controversy and 28 U. S. C. §1331 which grants jurisdiction to a District Court of the United States for actions brought under the laws of the United States.

7. Venue is proper in this Court pursuant to 28 U. S. C. §1391.

## FACTUAL BACKGROUND

8. On June 6, 2019, Judith and Daniel Bradley, on behalf of their adult son, Jack, filed an initial due process hearing request with KDE ("Initial Request") alleging, among other things, JCPS failed to provide special education services and implement an Individual Education Plan (IEP) for Jack while he attended Craft Academy ("Craft") at Morehead State University ("MSU"). *See* Initial Request, attached hereto as Exhibit B.

9. In 2013, Jack applied to and was accepted into JCPS's DuPont Manual High School for the school's Math, Science, & Technology ("MST") magnet program for academically advanced students. While a student in JCPS, Jack qualified for special education services for the disability of autism. Jack received services for written expression, executive

8

functioning/independent living, and social skills. Jack was also identified as a "gifted student" as defined in KRS § 157.200.

10. Throughout the 2014-15, 2015-16, and 2016-17 school years, Jack excelled in the MST track at Manual High School, taking many Advanced Placement ("AP") courses. While at Manual, Jack also took a college level course which was taught with a college curriculum through the University of Louisville. Students at Manual are able to take college level courses at U of L both on the college campus and at Manual. Jack took advantage of that opportunity by taking a college level English class, and could have taken more had he elected to remain at Manual.

11. Prior to the 2017-18 school year, Jack applied for, and was accepted into, the Craft Academy for Excellence in Science and Mathematics ("Craft"). Craft is a residential, dual-credit program created and offered by Morehead State University ("MSU"), located in the other part of the state in Rowan County, Kentucky.

12. After visiting the MSU campus, Jack and his parents decided that they wanted Jack to attend Craft. Exh. B, p. 6, ¶ 40.

13. Craft is funded from the budget of MSU, a post-secondary school, not from the budget for P-12. *See* Exh. A, p. 7. Programs at Craft are exclusively and 100% post-secondary coursework for which the student receives both college and high school credit. *Id*. High school students admitted to Craft attend classes with MSU undergraduates. *Id*.

14. Craft is not under the control of, nor does it answer to, any school district board of education. *Id*. p. 8. Neither any local school district nor KDE has control over who is admitted to the program or how instruction is provided. *Id*., pp. 7-8. Craft does not contract with any local school district, such as JCPS, nor KDE. *Id*., p. 8. Craft is under no obligation to accept public school students who apply, and Craft can, and does, accept students from private schools. *Id*. As the ECAB recognized, Craft is "simply a program that enables high school students to attend MSU classes alongside MSU undergraduate students and receive dual credit for those classes." *Id*.

9

15. On May 15, 2017, the KDE issued a letter addressing the applicability of IDEA to programs such as Craft. *See* 5/15/17 Letter, attached as <u>Exhibit C</u>. In the letter, the KDE recognized that the "regulatory language applicable to IDEA suggests neither postsecondary institutions nor the local school districts are required to implement student IEPs at Gatton and Craft." Exh. C, p. 4.

16. Shortly thereafter, on May 19, 2017, JCPS conducted an ARC meeting to develop and revise an IEP for Jack, with Jack, his parents, and other representatives in attendance. The record from the meeting reflects that the committee, including Jack and his parents, were in agreement as to the amendments to the IEP. *See* Conference Summary Report, p. 5, attached as <u>Exhibit D</u>. Because at this point in time Jack had been accepted into Craft, the Bradleys asked what the team felt would be needed to support Jack at Craft. *Id*. The Bradleys further inquired as to how a dual credit opportunity would work if Jack remained at Manual and took dual credit courses at U of L instead. *Id*. Ultimately, the Bradleys reported they believed "the JCPS IEP [was] a wonderful plan for Jack and [they] appreciated it." *Id*.

17. At the meeting, the Committee discussed the recent guidance from KDE and JCPS's obligations with respect to Craft generally. The Bradleys were informed that based on IDEA regulations JCPS was not obligated to provide services to Jack in the event that he chose to attend Craft. Exh. D, p. 9. JCPS explained that Craft was considered to be a college, or post-secondary education, and the IDEA did not permit the district to pay for services in a college program, on a college campus. *Id*. However, JCPS also informed the Bradleys that, if Jack chose to attend Craft, it would nevertheless work with the family and MSU disability office to ensure appropriate accommodations were in place through the 504 plan that the university was responsible for implementing. *Id*. JCPS further suggested that the Bradleys take the IEP to Craft and ask if there were things that could be done to accommodate him while in the program, and presented to the Bradleys a release for them to sign that would authorize JCPS to discuss Jack's needs with

10

Craft. *Id.*, p. 11. In other words, "[s]ervices will not be provided but consultation and input will be given." *Id.*

18. At the same time, JCPS offered a free appropriate public education in a high school in JCPS for Jack if he chose not to attend Craft and to return to JCPS. *Id.*

19. Following the May 19, 2017 ARC meeting, the Bradleys continued to request that JCPS reverse its position regarding its legal obligations with respect to Craft. Exh. B., p. 8, ¶ 66. The Bradleys were again advised that that they had the right to unilaterally enroll Jack in any program outside of JCPS, if they so chose, but that JCPS's obligation under the IDEA was to offer a free, appropriate public education for Jack and that it had met that obligation by offering FAPE in Jefferson County. *Id.*, p. 9, ¶ 67. Ultimately, the Bradleys elected the former route, and enrolled Jack in the Craft program for the 2017-2018 and 2018-19 school years, notwithstanding the district's position. The Bradleys did not pay tuition for Jack to attend Craft as tuition is paid by the state and is not charged to students.

20. Jack graduated with a diploma from Manual High School on June 8, 2019. Following graduation, Jack received a Lincoln Scholarship to Centre College, and it is JCPS's understanding that he is currently attending that private college.

21. Around that same time, the Bradleys filed their original due process request, contending that JCPS violated the IDEA and corresponding state regulations by not implementing his IEP while he chose to attend Craft. Exh. B.

22. The crux of the Bradleys' complaint centered around Jack's enrollment at Craft and JCPS's statutory obligations with respect to same.

23. In the Request, the Bradleys acknowledged that JCPS implemented Jack's IEP during his 2014-17 school years. Exh. B, p. 5, ¶ 24. The Bradleys further acknowledged that, during the 2016-17 school year, Jack's ARC committee encouraged him to participate in a dual enrollment course at the university located within the school district, the University of Louisville.

11

*Id.*, ¶ 25. The Bradleys admitted that JCPS did not require Jack to "give up his IEP" as a condition for enrollment in this proposed dual enrollment program, which was during his participation in the course. *Id.*, ¶ 26.

24.　　In response to a challenge to their standing to represent and assert claims on behalf of their adult son, the Bradleys retained counsel and amended their original due process request to, among other things, add KDE and MSU as additional Respondents ("Amended Request"). With respect to JCPS, this Amended Request merely incorporated by reference all allegations contained in the Initial Request.

25.　　While this dispute waged on, the Interim Commissioner of Education, Dr. Wayne Lewis, issued a letter on July 17, 2018, recommending implementation of IEPs at Craft for students with disabilities "until KDE receive[d] further clarification on this matter through action by the Kentucky General Assembly, a ruling by a court of competent jurisdiction, or written guidance from the United States Department of Education." *See* 7/17/18 Letter, p. 2, attached as Exhibit E.

26.　　On September 3, 2019, JCPS filed its Response to this Amended Request and Motion to Dismiss. *See* JCPS Response to Amended Request, attached as Exhibit F. In this Motion, JCPS sought to dismiss the latest iteration of Defendants' request on several grounds. Pertinent to the present Complaint, JCPS argued that it had complied with its obligations under IDEA by offering Jack FAPE at a school with access to the transition services and dual-credit programming in Louisville. Exh. F, pp. 6-7. The fact that Jack's parents unilaterally elected to enroll him at Craft, a residential program through MSU in Rowan County, Kentucky, did not render the program/services *offered* by JCPS in violation of the IDEA. *Id.*

27.　　Two weeks later, on September 17, 2019, the (now former) Commissioner Lewis received just the guidance he needed when the United States Department of Education ("USDOE") clarified that JCPS could not use IDEA Part B funds to provide IDEA services to Jack at Craft. *See* 9/17/19 Guidance, attached as Exhibit G.

12

28.     According to the USDOE, IDEA Part B funds could be used to support students with disabilities with IEPs in dual enrollment programs *only* if certain conditions are met. First, "the student's IEP Team must determine that the courses offered as part of a dual enrollment program are necessary to provide the student with FAPE." Exh. G, p. 4.  Second, because FAPE does not include postsecondary education, LEAs are only permitted to provide or pay for services that constitute FAPE in postsecondary education settings with IDEA Part B funds "if the education provided is considered secondary school education in the State." *Id.*

29.     The following day, both MSU and KDE filed their respective Motions to Dismiss, relying heavily on the USDOE's Guidance, which JCPS did not have the privilege of citing at the time it filed its Motion to Dismiss.

30.     However, JCPS was able to incorporate this Guidance into its Reply in support of its Motion to Dismiss the Amended Request, which was filed on October 2, 2019. *See* Reply, attached as Exhibit H. In its Reply, JCPS argued it was under no legal obligation to provide Jack FAPE in accordance with the IDEA while at Craft because of two central reasons: first, Jack's "IEP Team" had not determined that the courses offered at Craft were "necessary" to provide him with FAPE. Secondly, the program provided at Craft was not considered secondary school education.

31.     On November 12, 2019, the Hearing Officer ("HO") granted the motions of KDE and MSU on the grounds that "Craft is not a secondary school and is not regulated or controlled by KDE." Agreeing with the arguments posed by JCPS, the HO pointed out that the Kentucky General Assembly had "not defined Craft as a secondary program subject to the oversight and control of KDE, including the [IDEA] compliance." In so holding, the HO categorically acknowledged that "Craft is a postsecondary program." Therefore, because the Kentucky General Assembly has not defined Craft as a secondary school and because the IEP team did not determine

that attendance at Craft was necessary for Jack to receive FAPE, the Hearing Officer held that the claims against KDE and MSU must be dismissed.

32. That same day, the HO also issued an Order denying JCPS' motion. However, in the Order, the HO failed to address JCPS's arguments with respect to the USDOE's Guidance despite JCPS making the same arguments as those relied upon to dismiss KDE and MSU. Assuming this was simply an oversight based on timing, JCPS filed a Motion to Reconsider on November 19, 2019.

33. On December 3, 2019, JCPS's Motion to Reconsider was granted in part. *See* 12/3/19 Order, attached as <u>Exhibit I</u>. Consistent with dismissing KDE and MSU, the HO relied upon the fact that the Kentucky General Assembly had not defined Craft as a secondary school. The HO similarly relied on the recent USDOE Guidance clarifying that, for IDEA Part B funds to be used to support students with IEPs in dual enrollment programs, the student's IEP Team must determine that the courses offered as part of the program are necessary to provide FAPE, and that said program constitutes secondary education. Exh. I, pp. 2-3. As a result of the Order, the Bradleys' claims with respect to the 2017-18 and 2018-2019 school years (the years Jack attended Craft) were dismissed, while the claims regarding the 2016-17 school year (when Jack attended JCPS) remained.[1]

34. On December 17, 2019, the Bradleys filed their Notice of Appeal. On February 14, 2020, the Bradleys filed their appeal of the HO's decision with the state administrative appeals board, the Exceptional Children Appeals Board ("ECAB"). In this appeal, the Bradleys argued, among other things, that they were categorically entitled to an impartial due process hearing and that the HO erred in dismissing the claims as legally insufficient. *See* Bradleys' ECAB Appeal,

---

[1] In their due process request, the Bradleys challenged the 2016-17, 2017-18 and 2018-19 school years. However, the claims with respect to the 2016-17 school year were subsequently dismissed by way of Agreed Order on February 19, 2020.

14

pp. 13-14. The Bradleys further argued that the HO's reliance upon and interpretation of Kentucky regulations and the guidance issued by the KDE and USDOE was incorrect and misapplied. *See id.*, pp. 17-19, 21-24. Additionally, the Bradleys contended that whether Jack's IEP Team determined that attendance at Craft was necessary for FAPE was an issue of fact that was in dispute. *Id.*, p. 20.

35. On March 23, 2020, JCPS filed its response brief with the ECAB. *See* "Response Brief," attached as <u>Exhibit J</u>. In its Brief, JCPS argued that the HO was within his authority to dismiss the Bradleys' claims as insufficient as a matter of law, and that the HO correctly found that the Bradleys' Request failed because one or both of the two necessary conditions were not met; namely, that (1) the Kentucky General Assembly has not defined Craft as a secondary school; and/or (2) Jack's IEP Team did not determine that courses offered as part of the Craft program were necessary to provide Jack with FAPE. Because one or both of these conditions were not met, and the claims with respect to the 2016-17 school year had already been voluntarily dismissed, the Bradleys' Amended Request was insufficient as a matter of law.

36. The ECAB issued its Final Decision and Order on May 21, 2020. In its Order, the ECAB sustained the decision of the HO dismissing both the KDE and MSU on the grounds that, as a matter of law, Craft is not secondary education under Kentucky law. Exh. A, p. 6. Thus, because "LEAs are only permitted to provide or pay for services with FAPE funds if (1) the dual credit program was required to provide FAPE **and** (2) if the education provided is considered secondary school education," FAPE obligations could not extend to KDE and MSU with respect to Jack's attendance at Craft. *Id.*, p. 5, 10 (emphasis original). Clearly, the ECAB's reasoning with regard to KDE and MSU was consistent with existing law and the USDOE's 9/17/19 guidance.

37. The reasoning and disposition dismissing KDE and MSU clearly applies equally to JCPS. However, the ECAB's Order seemingly did not specifically state that it was also dismissing these claims against JCPS. ECAB clearly should have done so in its Order.

15

38. In addition, the Order went on to hold that there were genuine issues of material fact as to whether JCPS offered FAPE for the years 2017-2018 and 2018-2019 while Jack was attending Craft. *Id*., p. 12. This holding was premised on a purported dispute regarding the first prong of the USDOE's guidance; that is, whether the IEP Team determined attendance at Craft was necessary for the provision of FAPE. *Id*. With respect to this condition, the ECAB pointed to the fact that the Bradleys had "clearly disagreed" with the appropriateness of the IEP from the beginning of the Due Process action. *Id*. Because of this alleged dispute, the ECAB ordered the case against JCPS be remanded to conduct a hearing to consider whether Craft was necessary for the child to receive FAPE, whether FAPE was appropriately offered, and whether the IEP offered appropriate transition services and the least restrict environment. *Id*., p. 13.

39. In reality, there was no genuine issue of material fact with regard to the above "disputes." That is, based on the clear facts in the record, the Bradleys only "clearly disagreed" with JCPS's legal position that the law did not require JCPS to implement IDEA services at Craft. However, this disagreement is immaterial to the issues at hand, both in this appeal and before the ECAB, because if, as a matter of law (and as the HO correctly found), JCPS was not required to implement the IEP at Craft, then whether the Bradleys' agreed with that interpretation is of no consequence.

40. Indeed, in the pertinent ARC meeting, Judith Bradley stated that, notwithstanding the issues with Craft, the JCPS IEP was "a wonderful plan for Jack and she appreciates it." Exh. J, Exhibit 2 p. 5.

41. Similarly, with regard to Jack's transition needs and post-secondary goals, issues on which the ECAB ordered a hearing, the Conference Summary Report reveals that Jack's parents "agree[d] to this section and it is accurate." *Id*., pp. 8-9.

16

42. Further still, on the section pertaining to the least restrictive environment, the Conference Summary Report similarly reflected that the Bradleys agreed to the plan offered by JCPS. *Id.*, p. 11.

43. Regardless, while at first blush the ECAB's Order appeared to reverse the dismissal of JCPS in its entirety, upon closer inspection of the Order's language and underlying rationale that does not appear to be the case.

44. JCPS was *not* required to implement FAPE while Jack attended Craft. As the ECAB correctly noted, no evidentiary hearing could countermand the applicable law dictating that Craft is not secondary education. *Id.*, p. 10. Accordingly, for the ECAB's holdings with respect to KDE, MSU, and JCPS to be internally consistent, a substantial portion of the claims against JCPS in the Bradleys' due process requests must remain dismissed.

45. The ECAB's finding that Craft did not, as a matter of law, constitute secondary education should have been sufficient to affirm the dismissal of JCPS with respect to the claims related to Craft. The USDOE guidance stated that there was a duty to implement special education services only where (1) the dual credit program was required to provide FAPE **and** (2) if the education provided is considered secondary school education. Because the conditions espoused by the USDOE and endorsed by both the HO and ECAB were a conjunctive, the failure of the first prong would be similarly fatal to the Bradleys' claims against JCPS.

46. Indeed, like the second prong, no evidentiary hearing could countermand the fact that Jack's IEP Team did not determine that attendance at Craft was necessary for the provision of FAPE. The first condition of the USDOE's guidance was characterized in the affirmative; that is, the IEP Team must *affirmatively* determine that attendance at Craft was necessary for the provision of FAPE. That the IEP Team made no such affirmative determination is a matter of sheer logic and does not require resort to law, much less an evidentiary hearing. If the condition was satisfied, *i.e.* the IEP Team had determined that attendance at Craft was necessary, then JCPS would have

17

provided IDEA-based services, and there would have been no reason for the Bradleys to file their due process request in the first instance.

47. On May 29, 2020, JCPS filed a Motion for Clarification of ECAB's Decision and Order asking the ECAB panel to clarify their Decision and Order as the language of that holding indicated that the Bradleys could no longer pursue their claim against JCPS that there was a duty to implement Jack's IEP while he was away at Craft. On June 17, 2020, ECAB issued an Order stating that it no longer had jurisdiction over the matter but stating that its decision was clear that it was only remanding the case back to the HO for a determination of whether JCPS offered Jack FAPE <u>before</u> he decided to attend Craft. *See* 6/17/20 Order, attached as <u>Exhibit K</u> (emphasis added.) This finding also confirms that ECAB intended to dismiss any claim against JCPS that it had a legal obligation to implement Jack's IEP while he attended Craft.

## **COUNT I**

48. JCPS hereby realleges and reiterates each and every allegation as set forth in paragraphs 1-47 of this Complaint.

49. To the extent the ECAB's May 21, 2020 Order found that there was a genuine issue of material fact as to whether Jack's IEP Team determined that attendance at Craft was necessary for the provision of FAPE, the Order is erroneous as matter of law and is unsupported by substantial evidence in the record.

50. Similarly, to the extent the ECAB's May 21, 2020 Order failed to clearly state that it was dismissing of the claims against JCPS pertaining to its obligations to implement IDEA-based services at Craft, said Order is erroneous as a matter of law and is unsupported by substantial evidence in the record.

## **COUNT III**

51. JCPS hereby realleges and reiterates each and every allegation as set forth in paragraphs 1-50 of this Complaint.

52. For the 2017-2018 and 2018-19 school years, Jack and his parents unilaterally chose to remove him from JCPS and attend Craft, a post-secondary program independent from JCPS and for which neither Jack nor the Bradleys would be entitled to reimbursements nor implementation of IDEA-based services.

53. There is no genuine issue of material fact that Jack and the Bradleys made this unilateral decision for Jack to attend Craft independent of JCPS' offer of FAPE within the district.

54. Accordingly, the ECAB's May 21, 2020 Order remanding the case for a hearing on any claims regarding the offer of FAPE for the 2017-18 and 2018-19 school years, irrespective of Craft, is erroneous as a matter of law and is unsupported by substantial evidence in the record.

## **PRAYER FOR RELIEF**

Wherefore, Defendant/Counterclaimant/Crossclaimant/Third-Party Plaintiff, Jefferson County Public Schools requests that this Court:

A. Assume jurisdiction over this matter;

B. Receive the records of the IDEA administrative proceeding described herein under seal;

C. Conduct a review of said record as set forth in 20 U. S. C. §1415(i)(2)(c);

D. Enter judgment reversing the ECAB Decision to the extent it reversed the dismissal of the claims against JCPS and dismiss all claims against JCPS;

E. Dismiss the Complaint pending against Defendant/Counterclaimant/Crossclaimant/Third-Party Plaintiff JCPS with prejudice;

F. Provide Defendant/Counterclaimant/Crossclaimant/Third-Party Plaintiff JCPS with the opportunity to provide additional evidence in its own defense; and,

G. Grant any and all additional relief to the Defendant/Counterclaimant/ Crossclaimant/Third-Party Plaintiff JCPS as this Court deems just and proper.

Respectfully submitted,

*s/Dana L. Collins*
Mark S. Fenzel
Dana L. Collins
Matthew P. Dearmond
**MIDDLETON REUTLINGER**
401 South Fourth Street
Suite 2600
Louisville, Kentucky 40202
mfenzel@middletonlaw.com
dcollins@middletonlaw.com
mdearmond@middletonlaw.com
*Telephone:* (502) 584-1135
*Facsimile:* (502) 561-0442
*Counsel for Defendant/Counterclaimant/*
*Crossclaimant/Third-Party Plaintiff,*
*Jefferson County Public Schools*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed according to the rules of Electronic Court Filing (ECF) in effect for the Western District of Kentucky – Louisville Division on this the *18th* day of August, 2020, which ECF system will provide a copy of same to all persons registered to receive service in this case, including, but not limited to the following:

Marianne Chevalier
**CHEVALIER & KRUER, PSC**
2216 Dixie Highway
Fort Mitchell, KY 40117
mchevalier@lawcg.com
*Counsel for Plaintiff/*
*Counterrespondent*

Todd G. Allen
Ashley Lant
**KENTUCKY DEPARTMENT OF EDUCATION**
300 Sower Blvd. 5th Floor
Frankfort, KY 40601
todd.allen@education.ky.gov
ashley.lant@education.ky.gov
*Counsel for Defendant/Crossrespondent Kentucky Department of Education*

Joshua M. Salsburey
Jessica R. Stigall
**STURGILL, TURNER, BARKER & MOLONEY,**
333 West Vine Street, Suite 1500
Lexington, Kentucky 40507
Telephone: (859) 255-8581
jsalsburey@sturgillturner.com
jstigall@sturgillturner.com
*Counsel for Defendant,*
*Morehead State University*

*s/Dana L. Collins*
*Counsel for Defendant/Counterclaimant/*
*Crossclaimant/Third-Party Plaintiff,*
*Jefferson County Public Schools*